IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

RICKIE HILL                                                                                              PLAINTIFF

V.                                                                               CAUSE NO.: 1:11CV63-SA-DAS

MIKE HALFORD, individually and officially,
ROOSEVELT BRIDGES, individually and officially, and
LOWNDES COUNTY SCHOOL DISTRICT                                                                DEFENDANTS

MEMORANDUM OPINION

Defendants Mike Halford and Roosevelt Bridges have filed motions to dismiss Plaintiff's allegations against them in their individual capacities. Plaintiff failed to respond. After reviewing the complaint, motions, and case law, the Court makes the following findings:

*Factual and Procedural Background*

Plaintiff, a teacher and coach with the Lowndes County School District, was relieved of his coaching duties after allegations regarding inappropriate contact with a female student surfaced. According to the Plaintiff, school officials forced him to undergo testing for sexually transmitted diseases and report the results of the tests to them.

Plaintiff filed an Amended Complaint against the school district, Mike Halford, Superintendent of the Lowndes County School District, and Roosevelt Bridges, the Athletic Director. Plaintiff alleges Defendants violated his constitutional rights by failing to hold a due process hearing and forcing him to undergo medical testing and requiring him to release that information to the school district. Halford and Bridges assert that, in their individual capacities, Plaintiff has failed to state a claim against them, or alternatively, that they are entitled to qualified immunity.

*Motion to Dismiss Standard*

In considering a motion to dismiss, the court accepts as true all well-pleaded facts and views

them in the light most favorable to the plaintiff. Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). However, a court is not bound to accept legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949, 173 L. Ed. 2d 868 (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955).

The Fifth Circuit has held that claims brought under Section 1983 against public officials have a heightened pleading requirement, and that a Section 1983 claim requires a plaintiff to allege "more than conclusory assertions. It requires claims of specific conduct and actions giving rise to a Constitutional violation." Baker, 75 F.3d at 195.

*Discussion and Analysis*

Hill brings four constitutional claims - procedural due process, violation of right to privacy, unreasonable search and seizure, and right against self-incrimination - and two state law claims: breach of contract and invasion of privacy.

　　A.  *Constitutional Claims*

Because the Constitution creates no private cause of action, an aggrieved plaintiff must pursue such claims under 42 U.S.C. § 1983, as Hill does here. To state a viable claim under Section 1983, a plaintiff must demonstrate (1) that he was deprived of a right secured by the Constitution or the laws of the United States, and (2) that the person depriving the plaintiff of this right acted under

color of any statute of the State. West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

Hill's complaint provides that "the individual officers, directors, supervisors, managers, employees and/or agents mentioned herein, acted within the scope of their duties as officers, directors, supervisors, managers, employees and/or agents of Defendant Lowndes County School District and under the color of state law." Defendants assert that this language precludes personal liability as Hill admits that all actions were taken in their official capacity. In Kentucky v. Graham, the Supreme Court explained the difference between individual capacity claims and official capacity claims:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against that entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgement in an official-capacity suit must look to the government entity itself.

473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (internal citations omitted). In Hafer v. Melo, the Supreme Court unanimously held that state officials sued for damages in their personal capacities are "persons" within the meaning of Section 1983, even when the claim is based upon the carrying out of official responsibilities. 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). The Court rejected the novel proposition that the fact that the official acted under public authority, which fulfills the color of law requirement, insulates the official from personal liability.

Claims against individual public officials under Section 1983, however, are subject to the

3

defense of qualified immunity. Foley v. Univ. of Houston Sys., 355 F.3d 333, 338 (5th Cir. 2003) (citing Todd v. Hawk, 72 F.3d 443, 445 n.7 (5th Cir. 1995); Wicks v. Miss. State Emp. Servs., 41 F.3d 991, 996 n.21 (5th Cir. 1995); Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 534 (5th Cir. 1997)). "Qualified immunity balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). If an official's conduct was objectively reasonable, it does not matter if that official's conduct violated a constitutional right; he is still entitled to qualified immunity. Nerren v. Livingston Police Dep't, 86 F.3d 469, 473 (5th Cir. 1996).

In evaluating a claim of qualified immunity, the court considers (1) whether the plaintiff has alleged a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), overruled in part by Pearson, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Courts have discretion to determine which of these questions to address first. Pearson, 555 U.S. at 236, 129 S. Ct. 808.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202, 121 S. Ct. 2151; see also Wernecke v. Garcia, 591 F.3d 386,

392 (5th Cir. 2009) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."). Moreover, each defendant's actions must be evaluated individually. Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007). See also Iqbal, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Therefore, in order to overcome Defendants' defense of qualified immunity, Hill's complaint must allege facts that, if true, demonstrate that each individual defendant violated his rights by acting in a way that he or she should have known was unlawful. "When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].'" Morgan v. Swanson, --- F.3d ---, 2011 U.S. App. LEXIS 19656, 2011 WL 4470233 at *7 (5th Cir. Sept. 27, 2011) (citing Ashcroft v. Al-Kidd, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011)). The Court examines Hill's claims against each of the defendants in light of this standard.

*1. Due Process*

Plaintiff alleges that the Defendants, and in particular, the Lowndes County School District and Mike Halford, unlawfully denied Hill the right to a due process and name-clearing hearing prior to being removed from his coaching position.

The Due Process Clause of the Fourteenth Amendment includes a procedural component and a substantive component. Montgomery v. Mississippi, 498 F. Supp. 2d 892, 910 (S.D. Miss. 2007) (citing Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)). Procedural

5

due process protects against "the deprivation by state action of a constitutionally protected interest in 'life, liberty or property'. . . without due process of law." Id. (quoting Zinermon v. Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)). The validity of this claim hinges on whether Hill had a constitutionally protected property interest in his coaching position. See Frazier v. Garrison Indep. Sch. Dist., 980 F.2d 1514, 1528 (5th Cir. 1993) (the procedural due process clause of the Fourteenth Amendment is "implicated only if a person has a constitutionally recognized interest in life, liberty, or property"). Whether Hill possessed such a property interest is "determined by reference to state law," Wells v. Hico Indep. Sch. Dist., 736 F.2d 243, 252 (5th Cir. 1984), and must "stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings." Blackburn v. City of Marshall, 42 F.3d 925, 936-37 (5th Cir. 1995).

The viability of Hill's due-process claim depends on his entitlement to a property interest. See Nunez v. Simms, 341 F.3d 385, 387 (5th Cir. 2003) ("In order to allege a due process deprivation of a property interest under the Fourteenth Amendment, the plaintiff must demonstrate a 'legitimate claim of entitlement' to that interest.") (quoting Bd. of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). Indeed, "[a] public school teacher has a constitutionally protected property interest in continued employment if he can demonstrate a reasonable expectation of continued employment." Nunez, 341 F.3d at 388 (citing Coats v. Pierre, 890 F.2d 728, 732 (5th Cir. 1989)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577, 92 S. Ct. 2701.

Plaintiff's contract provides that Hill "shall hold the position of Teacher/Coach" from August

6

3, 2010, until May 24, 2011, subject to "an emergency or other good cause in accordance with the policies of the employer." The coaching position entitled Hill to a supplemental stipend of $9,700. On December 2, 2010, Superintendent Mike Halford released Hill as a coach of the boys' varsity and junior high basketball teams and girls' basketball team. Hill claims he requested a due process hearing but was denied the opportunity. In absence of any facts regarding whether Hill was paid the stipend regardless of his coaching duties, and with an eye toward construing the facts in the light most favorable to the plaintiff, the Court finds that Plaintiff has sufficiently alleged a viable property interest in his coaching position.[1]

"Procedural due process entitles a public employee with a property right in his employment to notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present his side of the story." Fowler v. Smith, 68 F.3d 124, 127 (5th Cir. 1995). "The essential requirements of procedural due process under the Constitution are notice and an opportunity to respond." Finch v. Fort Bend Indep. Sch. Dist., 333 F.3d 555, 562 (5th Cir. 2003). "The fundamental requirement . . . is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)).

---

[1] The Fifth Circuit has held that a public employee's demotion is a deprivation of a property interest only when the employee lost economic benefits that accompanied a position for which he had a legitimate claim of entitlement. See, e.g., Shawgo v. Spradlin, 701 F.2d 470, 476 (5th Cir.), cert. denied, 464 U.S. 965, 104 S. Ct. 404, 78 L. Ed. 2d 345 (1983); Jett v. Dallas Indep. Sch. Dist., 798 F.2d 748, 754 (5th Cir. 1986) (where Jett was terminated from his coaching position but continued to receive economic benefits, the Court held there was no property interest created entitling him to due process). Compare Ladner v. Hancock County Sch. Dist., 614 F. Supp. 2d 768 (S.D. Miss. 2008) (holding that the Education Employment Procedures Law of 2001, Miss. Code Ann. § 37-9-101, *et seq.*, does not apply to Plaintiff's head basketball coach contract as that contract specifically exempted itself from the EEPL).

Qualified immunity is defeated if an official "'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury. . . .'" Harlow, 457 U.S. at 815, 102 S. Ct. 2727 (quoting Wood v. Strickland, 420 U.S. 308, 322, 95 S. Ct. 992, 43 L. Ed. 2d 214 (1975)). Thus, pursuant to clearly established law, Hill was entitled to a predeprivation hearing. Taking the facts in the light most favorable to the Plaintiff, if Hill's right to a predeprivation hearing was disregarded, Halford would have not have acted reasonably, thus, qualified immunity, at this stage is improper. See Holden v. Knight, 155 F. App'x 735, 740 (5th Cir. 2005) (denying qualified immunity where predeprivation hearing was necessary but disregarded by government officials).

Thus, Halford's Motion to Dismiss [11] as to Plaintiff's procedural due process claim is denied. Plaintiff has not put forth facts or evidence concerning Roosevelt Bridges' involvement in the denial of his due process rights. Therefore, any claim against Bridges in his individual capacity is dismissed.

*2. Fourth Amendment*

Halford and Bridges seek to be dismissed in their individual capacities from Plaintiff's claims that his right to privacy, right to be free from self-incrimination, and right to be free from unreasonable search and seizure was violated by being forced to submit his medical records to school officials. Plaintiff asserts that school officials conditioned his continued employment upon submitting to medical testing and providing the results to those parties. Hill alleges that "school officials" informed him that if the results were positive, he was going to jail.

Plaintiff failed to assert any specific allegations regarding his subjection to medical testing

8

against Roosevelt Bridges. Accordingly, Plaintiff's claims against Bridges in his individual capacity as to the right of privacy, and unreasonable search and seizure claims are dismissed. Hill alleges that Halford threatened his employment in order to coerce him into submitting to medical testing.

The record is unclear as to how Hill was tested for sexually transmitted diseases. However, both blood sampling and urinalysis have been recognized as Fourth Amendment searches. See Chandler v. Miller, 520 U.S. 305, 313, 117 S. Ct. 1295, 137 L. Ed. 2d 513 (1997) (collection and testing of urine by the government constitutes a search subject to Fourth Amendment constraints); United States v. Bullock, 71 F.3d 171, 176 (5th Cir. 1995) (taking of blood samples is a Fourth Amendment search). The Supreme Court has noted that the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable. Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989). What is reasonable, however,

> "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." Thus, the permissibility of a particular practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."

Skinner, 489 U.S. at 619, 109 S. Ct. 1402 (citations omitted). "[W]here a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement," a more particularized balancing is necessary to determine reasonableness. Treasury Employees v. Von Raab, 489 U.S. 656, 665, 109 S. Ct. 1384, 103 L. Ed. 2d 685 (1989). Indeed, Fourth Amendment reasonableness "ordinarily must be based on individualized suspicion of wrongdoing," nevertheless, "exceptions to the main rule are sometimes warranted based on 'special needs, beyond the normal need for law enforcement.' When such 'special needs' - - concerns other than crime detection - - are

alleged in justification of a Fourth Amendment intrusion, courts must undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties." Chandler, 520 U.S. 305, 313-14, 117 S. Ct. 1295 (citations omitted).

"Special needs" for these purposes have been found in a variety of circumstances, including "the Government's interest in regulating the conduct of railroad employees to ensure safety . . . its supervision of probationers or regulated industries, . . . [and] its operation of a government office . . . [or] school." Skinner, 489 U.S. at 620, 109 S. Ct. 1402. In Von Raab, such a "special need" was found respecting drug testing of Customs Service employees who would be required to either carry firearms or engage in drug interdiction, the Court observing "the Government's need to discover such latent or hidden conditions, or to prevent their development, is sufficiently compelling to justify the intrusion on privacy entailed by conducting such searches without any measure of individualized suspicion." Id. at 668, 109 S. Ct. 1402. This was so despite the fact that there was "no perceived drug problem among Customs employees." Id. at 673, 109 S. Ct. 1402.

On the other hand, it is clear that where the "need" is in essence simply "symbolic" - the desire to "project" a public image - it is not a "special" need for these purposes. Chandler, 520 U.S. at 322, 117 S. Ct. 1295; Pierce v. Smith, 117 F.3d 866, 873-874 (5th Cir. 1997)

The applicability of the special needs exception therefore turns on the principal use for which the test in this case was intended. If the purpose was to foster institutional safety, the tests pass constitutional muster. On the other hand, if the purpose was to bolster a criminal prosecution, a warrant would be required before obtaining a sample. Because such testing here was performed under the threat that the results, if positive, would be turned over for criminal prosecution, the immediate objective of the test was to generate evidence for law enforcement purposes. Therefore,

Defendants' actions do not "fit within the closely guarded category of special needs." Ferguson v. City of Charleston, 532 U.S. 67, 83-84, 121 S. Ct. 1281, 149 L. Ed. 2d 205 (2001).

For purposes of surviving a motion to dismiss, this Court finds that Hill has sufficiently alleged a constitutional violation in the form of an unreasonable search pursuant to the Fourth Amendment. Viewing the complaint's allegations in the light most favorable to the Plaintiff, at this stage, Halford is not entitled to qualified immunity for this violation.

*3. Fifth Amendment*

The Fifth Amendment provides that no person "shall be compelled in any *criminal* case to be a witness against himself." U.S. Const. amend. V (emphasis added). The applicability of this protection has been extended to the States pursuant to the Fourteenth Amendment. See Malloy v. Hogan, 378 U.S. 1, 8, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964).

The privilege against self incrimination only applies, however, when the government seeks to make a criminal defendant "a 'witness' against himself." Chavez v. Martinez, 538 U.S. 760, 767, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003). Here, there is no evidence of a criminal case currently pending against Hill. Therefore, the Fifth Amendment privilege against self-incrimination is not implicated by the School District's requirement that Hill be tested for sexually transmitted diseases. Accordingly, the Defendants' motion is granted as to the Fifth Amendment claims.

*4. Fourteenth Amendment*

Plaintiff also claims his right to privacy was violated when Defendants Halford and Bridges published their assertions about Hill, thereby branding him with a "badge of infamy." Plaintiff did not particularly allege that Mike Halford was responsible for or caused publication of the allegations. Plaintiff's conclusory statement that Halford violated his rights without any supporting facts fails

11

to meet the 12(b)(6) standard, as well as the heightened pleading requirement of Section 1983. Baker, 75 F.3d at 195. Thus, Halford is dismissed in his individual capacity from this claim.

Plaintiff has alleged that Roosevelt Bridges informed at least one student basketball player of the allegations even though Plaintiff was assured the investigation was confidential. The right to privacy consists of two inter-related strands: one protects an individual's interest in avoiding disclosure of personal matters (the confidentiality strand) and the other protects an individual's interest in making certain personal decisions free of government interference (the autonomy strand). Cantu v. Rocha, 77 F.3d 795, 806 (5th Cir. 1996); Fadjo v. Coon, 633 F.2d 1172, 1175 (5th Cir. 1981). In the context of government disclosure of personal matters, an individual's right to privacy is violated if: (1) the person had a legitimate expectation of privacy; and (2) that privacy interest outweighs the public need for disclosure. Fadjo, 633 F.2d at 1175-76 (discussing the balancing test required to evaluate privacy right claims).

Based on the representations alleged in Plaintiff's complaint that the allegations and investigation would be confidential, and pursuant to the Court's duty to view evidence in the light most favorable to the non-moving party, Hill had a legitimate expectation of privacy. Indeed, there was no explicit finding of wrongdoing on Hill's part. The test for sexually transmitted diseases came back negative, and the Mississippi Department of Human Services closed its investigation into the allegation. Therefore, it is reasonable to state, at this stage of the proceedings, that Hill's privacy interest outweighed the public need for disclosure. As such, Bridges' breach of confidentiality by informing at least one student of the allegations was not objectively reasonable. Therefore, taking the facts in the light most favorable to Plaintiff, at this stage, Bridges is not entitled to qualified immunity in his individual capacity.

12

*2. State Law Claims*

Plaintiff alleges that Defendants breached his contract as well as invaded his privacy by coercing him to submit to medical testing and publishing stigmatizing information about him. Plaintiff has presented no proof that Roosevelt Bridges was a party to the contract between himself and the Lowndes County School District. As such, the breach of contract claim against Bridges is dismissed.

All other claims survive this initial motion to dismiss inquiry.

*Conclusion*

Defendants' motions to dismiss [11, 13] are granted in part and denied in part.

SO ORDERED, this the 18th day of January, 2012.

                                            **/s/ Sharion Aycock**
                                            **U.S. DISTRICT JUDGE**